Catterson, J.
(dissenting in part). I must respectfully dissent in part. The sentence proposed by the majority, even though reduced from 20 years to 15 years, is, in my opinion, still excessive. As defense counsel argued at sentencing, this is a “straight possession case.” The 30-year-old defendant did not fire any of the weapons, injure anyone, or commit any acts of violence during the incidents of weapons possession. The majority justifies the 15-year sentence by relying entirely on the testimony of the defendant’s girlfriend. However, the testimony that the defendant threatened to shoot her and other people which the majority reiterates for five pages was soundly rejected by the triers of fact. Had the jury credited that testimony, they would not have acquitted the defendant of all counts that included intent to cause harm to another person.
Clearly, the jury agreed instead with the defense’s characterization of the girlfriend as a “sophisticated and callous criminal” who decided to “get rid of” the defendant “once and for all.” Indeed, as adduced at trial, the defendant’s girlfriend was arrested in 2006 for prostitution, promoting prostitution, and money laundering. Subsequently, she entered into a cooperation agreement with the Manhattan District Attorney’s Office. On *598 January 2, 2008, she met with the detectives handling her prostitution case to formulate a plan to apprehend the defendant. The girlfriend lured the defendant to New York Downtown Hospital with a lie that she was sick and receiving treatment there. When the defendant arrived, he was arrested by the police.
Furthermore, the girlfriend’s testimony of threats against her sister’s boyfriend was controverted by the boyfriend himself who denied that the defendant ever said he would shoot him. Hence, it should not mystify the majority that I do not consider the defendant’s alleged numerous statements to his girlfriend as “threatening.” Quite simply, in my opinion, those statements cannot be viewed as credible evidence.
During the defendant’s arrest, a search of his automobile turned up a Bushmaster AR-15 rifle and large-capacity ammunition feeding devices, and the defendant was carrying a switchblade. In a subsequent search of his apartment, the police discovered, among other things, a Glock 9 millimeter pistol and seized three computers. At trial, the prosecution presented evidence taken from the computers that the defendant used internet forums to comment on carrying and shooting guns, and that the defendant sent an instant message on his computer stating that he had almost shot someone. Witnesses testified to the defendant’s possession of firearms outside of his apartment, including that he stowed the rifle and ammunition in his vehicle, and on two occasions took the Glock to Penn Station and a therapist appointment. However, there was no testimony that the defendant was violent or threatening, or that he fired the weapons on these occasions.
After a jury trial, the defendant was acquitted of possessing the assault rifle with intent to use it against another person, and both counts of first-degree robbery. He was convicted of one count of second-degree criminal possession of a weapon (the rifle) and multiple counts of third-degree criminal possession of a weapon (the Glock, the rifle, ammunition feeding devices, and the switchblade). Having been previously convicted of a felony,* the defendant was sentenced, as a second felony offender, to a determinate sentence of 15 years for possession of the loaded assault rifle; to indeterminate sentences of 3V2 to 7 years for each of the two counts of possession of the Glock, concurrent with each other and consecutive to the 15-year sentence; to *599 determinate sentences of seven years for possessing an assault weapon and large capacity ammunition feeding devices, concurrent with each other and the above sentences; and to an indeterminate sentence of 2 to 4 years for possession of a switchblade knife, concurrent with the above sentences. The aggregate sentence of I8V2 to 22 years’ imprisonment was reduced by operation of Penal Law § 70.30 (1) (e) (ii) to a determinate sentence of 20 years.
On appeal, the defendant argues, inter alia, that because there was no evidence that he ever shot at, or injured anyone with any of the weapons, the 20-year determinate sentence is excessive. The majority agrees to the extent of reducing the sentence to 15 years. For the following reasons, I would further reduce the sentence to seven years aggregate.
While a sentencing court possesses broad discretionary power with respect to the imposition of a sentence, this Court has broad, plenary power pursuant to CPL 470.15 (6) (b) to modify a sentence that is unduly harsh or severe. Thus, even where the sentence is within the permissible statutory range, this Court may review a sentence in the interest of justice without deference to the sentencing court and regardless of whether the trial court abused its discretion in the imposition of a sentence. (See People v Delgado, 80 NY2d 780, 783 [1992].)
The defendant was convicted of second-degree criminal possession of a weapon for possessing a loaded rifle outside of his home or business pursuant to Penal Law § 265.03 (3), which is a class C violent felony (see Penal Law § 70.02 [1] [b]). Under Penal Law § 70.06 (6) (b), governing second felony offenders, the sentencing court was required to impose a determinate sentence of imprisonment for a term of at least five years and not exceeding 15 years. The defendant was given the maximum term of 15 years.
In my view, imposition of the maximum sentence for weapons possession where no one was harmed ignores the precedent of this court. We have found a sentence of that length appropriate in weapons possession cases where a homicide has occurred. In People v Guzman (266 AD2d 37 [1st Dept 1999], lv denied 94 NY2d 920 [2000]), this Court affirmed a sentence of 7V2 to 15 years for criminal possession of a weapon in the second degree in a case where the defendant, a second violent felony offender, fatally shot an individual. In People v Banner (61 AD3d 592 [1st Dept 2009], lv denied 13 NY3d 741 [2009]), the defendant was convicted by a jury of manslaughter and criminal possession of a weapon in the second degree and we affirmed concurrent sentences of 8 and 15 years respectively. Fifteen years is the *600 sentence for manslaughter. (See e.g. People v Calderon, 66 AD3d 314 [1st Dept 2009] [5 to 15 years for second-degree manslaughter], lv denied 13 NY3d 858 [2009]; People v Abreu-Guzman, 39 AD3d 413 [1st Dept 2007] [5 to 15 years for second-degree manslaughter], lv denied 9 NY3d 872 [2007]; People v Oliveri, 29 AD3d 330 [1st Dept 2006] [15 years for first-degree manslaughter], lv denied 7 NY3d 760 [2006].)
The majority appears to agree with the People that a longer sentence is justified because the defendant is “a homicide waiting to happen.” Again, relying entirely on the testimony of the defendant’s girlfriend that he threatened to shoot her and others, the majority concludes that the defendant’s behavior, if not violent, was “unquestionably sinister and menacing.” However, it bears repeating that the jury specifically rejected the People’s claims that the defendant intended to use the weapons. On the contrary, the credible evidence showed that while the defendant had an avid interest in guns, which he used for target practice or sharpshooting, he did not use or intend to use the weapons against another person.
At sentencing, defense counsel described the defendant’s collection of weapons and ammunition and his activity on various internet gun forums as his “gun hobby.” Since it is undisputed that no one was injured, or even that the defendant displayed or brandished the rifle, I recommend five years determinate.
I would also recommend reducing the two sentences for third-degree criminal possession of the Glock to 2 to 4 years indeterminate for the following reasons: The defendant was convicted of third-degree criminal possession of a weapon pursuant to Penal Law § 265.02 (1), which was a conviction for fourth-degree possession, elevated to third degree by dint of a prior 1998 felony conviction. As a second felony offender, where the current crime is a nonviolent class D felony (see Penal Law § 70.06 [6] and § 70.02 [1] [c] [excluding subdivision one of section 265.02 from the definition of violent felony]), the maximum term for third-degree weapons possession is at least four years and must not exceed seven years. (See Penal Law § 70.06 [3] [d].) “[T]he minimum period of imprisonment under an indeterminate sentence for a second felony offender must be fixed by the court at one-half of the maximum term imposed and must be specified in the sentence.” (Penal Law § 70.06 [4] [b].) Pursuant to Penal Law § 70.06 (2), the term is indeterminate.
Choosing the maximum of seven years, the court sentenced the defendant to SVs to 7 years indeterminate for third-degree weapons possession, concurrent with each other and consecutive to the sentence for possession of the rifle. The defendant *601 persuasively argues that this amounts to a double-counting of his prior conviction. His 1998 conviction is counted once to raise the fourth-degree possession charge, a class A misdemeanor, to the third degree, a class D felony; and then a second time in his sentence as a second felony offender.
In my view, this double-counting, together with the undisputed fact that no one was injured, requires reduction of the sentence imposed by the sentencing court. Thus, I would recommend an indeterminate sentence of 2 to 4 years for each of the two Glock possession convictions. (See Penal Law § 70.02 (1) (c); § 70.06 (2), (3) (d); (4) (b); § 265.02 [1].) Pursuant to Penal Law § 70.30 (1) (d), “[i]f the defendant is serving one or more indeterminate sentences of imprisonment and one or more determinate sentences of imprisonment which run consecutively, the minimum . . . terms of the indeterminate . . . sentences and the term ... of the determinate sentence . . . are added to arrive at an aggregate maximum term of imprisonment.”
Thus, a five-year determinate sentence for second-degree criminal possession of a weapon and indeterminate concurrent sentences of 2 to 4 years for third-degree criminal possession of a weapon which run consecutive to the five-year sentence, result in an aggregate maximum sentence of seven years, which I believe is appropriate in this case and consistent with this Department’s precedent. (See e.g. People v Brown, 92 AD3d 455 [1st Dept 2012] [unanimously affirming a term of seven years for the defendant, a second felony offender, who was convicted of criminal possession of a weapon in the second degree after a jury trial], lv denied 18 NY3d 955 [2012]; People v Padilla, 89 AD3d 505 [1st Dept 2011] [unanimously affirming a seven-year sentence for the defendant, a second violent felony offender, who was convicted of criminal possession of a weapon in the second degree after a jury trial].) To the extent that the defendant was also sentenced to the maximum terms for the remaining third-degree weapons possession convictions (i.e., seven years determinate for possession of an assault rifle and large capacity feeding devices pursuant to Penal Law § 70.06 [6]; § 265.02 [7], [8]), I would reduce those also, but do not make those calculations here, since those seven-year sentences run concurrent with the seven-year aggregate calculated above and do not impact that sentence.

 The defendant was convicted in 1998 of conspiracy to commit arson in furtherance of an insurance scam wherein the defendant aided and abetted a friend who wanted to burn his own truck. Conspiracy to commit arson is not a violent felony as defined in Penal Law § 70.02.